UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK F. MURRAY,

                              Plaintiff,

         v.                                                    **DECISION AND ORDER**

                                                              19-CV-750S

WILLIAMSVILLE CENTRAL SCHOOL
DISTRICT,

                              Defendant.

## I.      Introduction

This is a civil rights action under 42 U.S.C. § 1983 and New York State Human Rights Law, N.Y. Exec. Law §§ 296-301, from the suspension of a middle school teacher for allegedly showing pornographic film to his students.  Plaintiff, teacher Patrick Murray, alleges Defendant, his employer, the Williamsville Central School District, deprived him of his liberty interest in his reputation and free speech rights as well as claims for sex and age discrimination under the New York State Human Rights Law (Docket No. 1, Compl.).

Before this Court is Defendant's Motion to Dismiss (Docket No. 11).  For reasons stated herein, that Motion is granted.

## II.      Background

### A.  Facts

In September 1990, Defendant hired Plaintiff as a middle school teacher (Docket No. 1, Compl. ¶ 5).  Plaintiff was over 40 years old and worked for Defendant for 28 years (id. ¶¶ 1, 6-7, 40, 41, 12, 29).  The Complaint does not allege where this incident occurred, but Defendant Williamsville Central School District produced the principal of the Casey

Middle School in support of its Motion to Dismiss (Docket No. 11, Def. Atty. Decl. Ex. C, Aff. of Peter Dobmeier ¶ 2).

Plaintiff alleges three causes of action from Defendant's management of accusations against Plaintiff that he showed pornography to his middle school students (id. ¶¶ 10-24, 27-37, 40-43, 44-49).  Plaintiff claims he was falsely accused of showing his students 20 minutes of pornography during class (id. ¶ 43; see id. ¶ 14).  Several students allegedly grossly defamed Plaintiff by publicizing the allegation on social media (id. ¶ 42).  Defendant suspended Plaintiff based on this accusation (id. ¶¶ 13, 30, 45).  These allegations impugned Plaintiff's reputation and implied that he was a sex offender (id. ¶¶ 15-16, 44), grossly impugning his good name and reputation (id. ¶ 17).  Defendant instructed Plaintiff not to speak of the allegations (id. ¶¶ 18, 31, 46 (ordered to maintain confidentiality)).  Defendant then made an official statement to the parents and the public that Plaintiff believes accepted the accusers' version of events (id. ¶¶ 19, 32, 47), praising the students who brought the allegations (id. ¶¶ 20, 33).  Defendant also took no action to stop the students' social media usage regarding these allegations (id. ¶¶ 21, 34).

For each cause of action, Plaintiff claims a loss of income, fear, anxiety, severe humiliation, shame, embarrassment, emotional pain and suffering, loss of savings, and loss of enjoyment of life (id. ¶¶ 24, 37, 54).  He seeks to recover compensatory damages for these lost wages and benefits, pain, suffering, unreimbursed medical costs, punitive damages, and attorneys' fees and costs (id. WHEREFORE Clause, at 7).

The First Cause of Action alleges violation of 42 U.S.C. § 1983 by unlawful deprivation of Plaintiff's liberty interest (id. ¶¶ 9-24), specifically in his good name and reputation (id. ¶ 10 & n.1, citing Jenkins v. McKeithen, 395 U.S. 411, 423-24, 89 S.Ct.

1843, 23 L.Ed.2d 404 (1969)).  This Court notes that in his Third Cause of Action, Plaintiff also stated he had 28 positive annual reviews by Defendant (id. ¶¶ 50-51).  Plaintiff contends Defendant was a public employer (id. ¶ 11; see also id. ¶ 28 (Second Cause of Action)).  He alleges that Defendant's actions were under color of law (id. ¶¶ 22, 23; see also id. ¶¶ 35-36 (Second Cause of Action)).

The Second Cause of Action alleges violation of § 1983 by unlawful deprivation of Plaintiff's free speech rights (id. ¶¶ 26-37), in Defendant's order that Plaintiff not comment about the allegations (id. ¶ 31).

The Third Cause of Action alleges violation of the New York State Human Rights Law for discrimination based on sex and age (id. ¶¶ 39-54).  Here, Plaintiff repeats that he is over 40-year-old male, alleging that he is in two protected classes (id. ¶¶ 40-41, 39).  He claims the false accusation and Defendant's reactions to it as an adverse action under the Human Rights Law (id. ¶¶ 42-49, 39).  Plaintiff claims that the handling of the allegations created a hostile work environment (id. ¶ 48).  Plaintiff claims age bias, asserting that a younger teacher showed R-rated movies to his class without any punishment (id. ¶ 53).  Although Plaintiff alleges sex discrimination, he has not alleged any discrimination based on sex.

Defendant moved to dismiss (Docket No. 11)[1].  In support thereof, Defendant submits the Affidavit of Defendant's Assistant Superintendent for Human Resources John McKenna (Docket No. 11, Def. Atty. Decl. Ex. B ¶ 1).  McKenna reports that Plaintiff

---

[1]In support of Defendant's Motion to Dismiss, Docket No. 11, Defendant submitted its attorney's Declaration with exhibits (including the Affidavits of Assistant Superintendent John McKenna, Ex. B; Peter Dobmeier, Ex. C) and Memorandum of Law, id.; and its Reply Memorandum, Docket No. 18.  In opposition, Plaintiff submits his Memorandum of Law, Docket No. 17.  He then sought leave to supplement his opposition with the Second Circuit's decision, Menaker v. Hofstra Univ., 935 F.3d 20 (2d Cir. 2019), Docket No. 19.  This Court granted leave to supplement and ordered any response to be submitted by December 2, 2019, Docket No. 20.  Defendant submitted its timely opposition to the supplement, Docket No. 22.

inadvertently played a film clip that depicted nudity that led to Defendant's sanction (id., Ex. B ¶¶ 3-4).  McKenna and Principal Peter Dobmeier dispute Plaintiff's conclusion that he was treated differently in his discipline than other teachers (id., Ex. B ¶ 5, Ex. C, Dobmeier Aff. ¶ 3-7).

Dobmeier, the Principal at Casey Middle School (id., Ex. C ¶ 2), explained the procedure used by the other teacher who showed R-rated movies to his class (id., Ex. C). That teacher first obtained signed permission slips from parents before showing the R-rated film as part of the curriculum and pursuant to Defendant's policies (id. ¶¶ 3-5). Dobmeier mentions one instance in which that teacher failed to submit permission slips and the result of the film being edited to avoid potentially offensive material; that teacher was reprimanded for not following procedure in seeking parental permission (id. ¶ 6). Dobmeier concludes that if any teacher failed to obtain signed permission slips and then showed an unedited R-rated movie to students that teacher would face discipline (id. ¶ 7).

Defendant alleges that Plaintiff entered into a Disciplinary Agreement with Defendant and the Williamsville Teachers' Association for this incident and served a five-day suspension without pay (Docket No. 11, Def. Memo. at 2).  Plaintiff remained employed by Defendant (id.; see also Docket No. 1, Compl. ¶ 52).

Originally, responses to Defendant's Motion to Dismiss (Docket No. 11) were due by August 30, 2019, and any reply by September 6, 2019 (Docket No. 12).  The parties stipulated to extend these deadlines (Docket No. 13) and this Court ordered responses to be due by September 13, 2019, and reply by September 20, 2019 (Docket No. 16). The Motion to Dismiss then was deemed submitted without oral argument.

### III.   Discussion

A.  Applicable Standards

1.  Motion to Dismiss

Defendant moves to dismiss on the grounds that the Complaint fails to state a claim for which relief cannot be granted (Docket No. 11).   Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court later held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion addresses the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2. Fourteenth Amendment and Stigma-Plus

The Second Circuit in Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004), observed

> "Section 1983 of Title 42 provides that 'every person who, under color of [state law] subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution and laws, shall be liable to the party injured.' 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth Amendment requires that, generally, a person must be afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest. U.S. Const. amend XIV, § 1; Board of Regents v. Roth, 408 U.S. 564, 569–70 & n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)."

Patterson, supra, 370 F.3d at 329.

For an employee's claim of violation of his or her due process rights,

> "A two-step inquiry is required to determine whether a plaintiff has suffered a violation of his due process rights in the employment context. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). First, the court must determine whether a protected property or liberty interest exists. Id. Second, the court must consider whether the government deprived plaintiff of that protected interest without

6

due process.  Id.; see also Narumanchi v. Bd. of Tr. of Connecticut State Univ., 850 F.2d 70, 72 (2d Cir.1988)."

Munno v. Town of Orangetown, 391 F. Supp.2d 263, 269 (S.D.N.Y. 2005).  An example of additional deprivation for a stigma plus claim is the deprivation of a plaintiff's property, such as termination of government employment, Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004).

### 3.  Free Speech

The Second Cause of Action alleges infringement of a public employee's free speech rights.  "A State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."  Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  As later noted by the Garcetti Court,

> "'the unchallenged dogma was that a public employee had no right to object to conditions placed upon the terms of employment—including those which restricted the exercise of constitutional rights.'  Connick, 461 U.S., at 143, 103 S.Ct. 1684.  That dogma has been qualified in important respects.  See id., at 144–145, 103 S.Ct. 1684.  The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."

Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (cited cases omitted).  The Court recognized that "when a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," id. at 418 (citations omitted).

Infringement of speech within the public employment context, however, requires an allegation that the infringed speech involved matters of public interest, Garcetti, supra, 547 U.S. at 417-18; Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731,

20 L.Ed.2d 811 (1969).  One test to determine whether the employee's First Amendment rights were violated by a public employer suppressing speech is "whether the employee spoke as a citizen on a matter of public concern," Pickering, supra, 391 U.S. at 568.  Even matters of public concern may be restricted by the public employer if that speech involves the public entity's operations, Garcetti, supra, 547 U.S. at 419.  "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations," Garcetti, supra, 547 U.S. at 418.

Personal grievances that do not also touch upon issues of importance to the public are not actionable as violations of the public employee's First Amendment rights in a § 1983 action, Ruotolo, supra, 514 F.3d at 189.

### 4.  New York State Human Rights Law

New York State Human Rights Law has the same burden of proof and burden shifting from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII claims, Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000);  Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n.3, 786 N.Y.S.2d 382, 391 n.3 (2004).  Under the McDonnell Douglas and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), analysis applied under the Human Rights Law, Plaintiff bears the burden of demonstrating that age or sex was a motivating factor in her adverse employment action, McDonnell Douglas, supra, 411 U.S. at 802-04; Burdine, supra, 450 U.S. at 252-56; e.g., Ferrante v. American Lung Ass'n, 90 N.Y.2d 623, 629, 665 N.Y.S.2d 25, 28-29 (1997) (age discrimination) (see Docket No. 11, Def. Memo. at 7); Malinowski v. New York State

Div. of Human Rights on Complaint of Malinowski, 58 Misc.3d 926, 929-30, 67 N.Y.S.3d 382, 385 (Sup. Ct. Albany County 2016) (sex discrimination).  He then must prove that an inference of discrimination where direct evidence is lacking leading to an application of the burden of proof shifting standard of McDonnell Douglas.  Under that standard, Plaintiff bears the burden of establishing a prima facie case of discrimination, Burdine, supra, 450 U.S. at 252-54; McDonnell Douglas, supra, 411 U.S. at 802.  He must prove the prima facie case by a preponderance of the evidence, Burdine, supra, 450 U.S. at 252-53.  Minimally, Plaintiff needs to present factual allegations of his claims, Nicolo v. Citibank N.Y.S., N.A., 147 Misc.2d 111, 115-16, 554 N.Y.S.2d 795, 799 (Sup. Ct. Monroe County 1990).

If Plaintiff meets this initial burden, the burden shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its action, id. at 254-56.  If that has been met, the burden shifts back to Plaintiff to show, beyond the prima facie case, that Defendant's determination was the result of discrimination, id. at 256; see McDonnell Douglas, supra, 411 U.S. at 804-05.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, supra, 450 U.S. at 253.  As noted by the Burdine Court, the McDonnell Douglas evidentiary burden shifting "serves to bring the litigants and the court expeditiously and fairly to this ultimate question," id., or as later held in the TWA case, "that the 'plaintiff [has] his [or her] day in court despite the unavailability of direct evidence,'" TWA, supra, 469 U.S. at 121 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)) (alterations added).

To support a prima facie case of age discrimination under the Human Rights Law,

> "plaintiff must demonstrate (1) that he is a member of the class protected by the statute; (2) that he was actively or constructively discharged; (3) that he was qualified to hold the position from which he was terminated; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination (see, e.g., McDonnell Douglas Corp. v. Green, 411 U.S., at 802, 93 S.Ct., at 1824; Woroski v. Nashua Corp., 31 F.3d 105, 108 [2d Cir.1994] )."

Ferrante, supra, 90 N.Y.2d at 629, 665 N.Y.S.2d at 28-29 (see Docket No. 1, Compl. ¶ 39).

Plaintiff claims he endured a hostile work environment (Docket No. 1, Compl. ¶ 48). To allege a prima facie claim of a hostile work environment under the Human Rights Law, Plaintiff needs to allege "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" (Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 [1993] [citations and internal quotation marks omitted] )," Forrest, supra, 3 N.Y.3d at 310, 786 N.Y.S.2d at 394.  As noted by the New York State Court of Appeals in Forrest,

> "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; *311 and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive" ([Harris, supra, 510 U.S.] at 23, 114 S.Ct. 367)."

Forrest, supra, 3 N.Y.3d at 310, 786 N.Y.S.2d at 394.

### 5.  Supplemental Jurisdiction

Subject matter jurisdiction over the state law claims (such as the Third Cause of Action) may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp.

3d 672, 680 (S.D.N.Y. 2014).  This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, Federal Practice and Procedure § 3722, at 115 (Jurisd. rev. 4th ed. 2018).  This Court, in its discretion under 28 U.S.C. § 1367(c), may decline to hear supplemental state law claims, United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"); 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard Freer, Federal Practice and Procedure § 3523.1, at 195 (Jurisd. 2008); 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard Freer, Federal Practice and Procedure § 3567.3, at 397, 399-400 (Jurisd. 2008); see also 14C Federal Practice and Procedure, supra, § 3722, at 122 (removal).  This Court thus has to consider "judicial economy, convenience and fairness to litigants" in deciding whether to exercise supplemental jurisdiction, Gibbs, supra, 383 U.S. at 726, and this Court should avoid "needless decisions of state law, 13 Federal Practice and Procedure, supra, § 3523.1, at 196.

Original federal jurisdiction here arises from Plaintiff's First and Second Causes of Action under 42 U.S.C. § 1983.  The Third Cause of Action under the New York State Human Rights Law share the same nucleus of operative facts as his federal civil rights claims.  Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998).  Under § 1367(c), this Court may still decline to exercise supplemental

jurisdiction if the state law claims predominate over the original jurisdiction claims, if all of the original jurisdiction claims are dismissed, or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(2), (3), (4); see Klein, supra, 26 F. Supp. 2d at 692.  District Courts in the Second Circuit should retain supplemental cases when none of the § 1367(c) factors apply, Treglia v. Town of Manlius, 383 F.3d 713, 723 (2d Cir. 2002); see 13D Federal Practice and Procedure, supra, § 3567.3, at 402.

      B.  Parties' Contentions

          1.  Defendant

Defendant first argues that Plaintiff fails to allege any tangible interest for the First Cause of Action (id., Def. Memo. at 4-5).  Defendant cites the Second Circuit's decision in Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004) (id. at 4), that interest in one's reputation alone "apart from a more tangible interest, is not a liberty or property interest sufficient to create . . . a cause of action under Section 1983."

There, Patterson alleged stigmatizing statements by the Mayor of Utica as well as Patterson's termination from employment with the City, id. at 327.  Patterson was repeatedly appointed and then fired as Commissioner of Public Works by the Mayor, first by Mayor Edward Hanna and then (after Hanna resigned) by Mayor Timothy Julian, who later made the allegedly defamatory statement.  Under the Utica City Charter, the Mayor exclusively has the authority to hire and fire (with or without cause) Commissioners, with Commissioners expected to serve two-year terms coterminous with the Mayor.  Id. at 328.  The jury found defendants made stigmatizing statements against Patterson, id. at 329.

The Second Circuit found that "when dealing with loss of reputation alone, a state law defamation action for damages is the appropriate means of vindicating that loss. [Paul v. Davis, 424 U.S. 693, 701–02, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)]; [Morris v. Lindau, 196 F.3d 102, 114 (2d Cir. 1999)]," Patterson, supra, 370 F.3d at 330.  Further,

> "loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment.   [Board of Regents v. Roth, 408 U.S. 564, 572–73, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1976)]; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir.1994).   For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment.  Roth, 408 U.S. at 573, 92 S.Ct. 2701; Morris, 196 F.3d at 114.  This type of claim is commonly referred to as a ''stigma-plus'' claim.  Id."

Patterson, supra, 370 F.3d at 330.  In order to fill the requirements for stigma-plus claim is to allege a public stigmatizing statement made with the employee's termination, id. (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980)).  Due process then requires the successful stigma-plus claimant get the remedy of a post-deprivation opportunity to clear his name, id.

Defendant now argues that suspension of employment without termination is not the "plus" to assert a "stigma-plus" claim (Docket No. 11, Def. Memo. at 4), Munno v. Town of Orangetown, 391 F. Supp.2d 263 (S.D.N.Y. 2005).

Defendant next contends that Plaintiff has not alleged that he was prohibited from speaking about a matter of public concern, thus failing to allege the free speech claim in the Second Cause of Action (id. at 5-6).

As for the Third Cause of Action, Defendant argues that Plaintiff did not allege sufficient facts to support an inference of discrimination, thus failing to state a New York State Human Rights Law claim (id. at 6-9).  Defendant points out that Plaintiff failed to

allege facts to rise an inference of sex discrimination (id. at 7).  Defendant contends that Plaintiff alleged only "one threadbare, conclusory allegation" of age discrimination based upon his treatment as compared with a younger teacher who showed an R-rated film (id. at 8).  Defendant denies that the allegation regarding the younger teacher was correct (id.; id., Dobmeier Aff. ¶¶ 4-5).  Defendant argues that Plaintiff has not alleged any adverse action (id., Def. Memo. at 8).

## 2.  Plaintiff's Response

Plaintiff included citations in his Complaint.  There, he alleged in the First Cause of Action violation of 42 U.S.C. § 1983 by unlawful deprivation of Plaintiff's liberty interest (Docket No. 1, Compl. ¶¶ 9-24), specifically in his good name and reputation (id. ¶ 10 & n.1, citing Jenkins v. McKeithen, 395 U.S. 411, 423-24, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).

Plaintiff responds to the Motion to Dismiss that Iqbal and Twombly do not have a heightened pleading requirement (Docket No. 17, Pl. Memo. at 1), Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("we do not apply any 'heightened' pleading standard").

Plaintiff argues the false allegation of a criminal matter is a matter of public concern, contrary to defense argument (id. at 5).  The allegations were defamatory (id.). Plaintiff asserts he alleged tangible liberty and property interest in his reputation and in his employment (id. at 6-8), contending that even a temporary deprivation is actionable (id. at 6).  Plaintiff distinguished Patterson on its procedural footing, that it was an appeal following trial (id. at 7).

He argues that he was not given an opportunity to explain how the inappropriate video was displayed, that he was playing an old VHS tapes that had been erased and recorded over (id.).  Plaintiff claims he had not seen the tape before he played it (id.).  Defendant then made an official statement praising the students who made the allegations and ordered Plaintiff not to speak of the allegations to anyone upon pain of further discipline (id. at 8).  He cites <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), for upholding the due process requirement of notice and an opportunity to be heard when a person's good name, reputation, honor, or integrity is at stake (id. at 8 n.26).

Plaintiff argues that Defendant has not applied the appropriate legal standard for civil rights claim under <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (id. at 8-11).  That case set forth the standard for Title VII rather than 42 U.S.C. § 1983 or civil rights generally.

### 3.  Defense Reply

In reply, Defendant did not argue that he was claiming a heightened pleading standard (Docket No. 18, Def. Reply Memo. at 2, 3).  Plaintiff, however, alleged bald assertions of discrimination that are legally insufficient (id. at 2-5).  Defendant denies that the matter Plaintiff wished to speak about, his version of the allegations, was not a matter of public concern and Plaintiff failed to plead that the matter was one of public concern (id. at 5).  Speech seeing personal grievance "must have a 'broader public purpose'" to be an actionable matter of public concern (id., quoting <u>Ruotolo v. City of N.Y.</u>, 514 F.3d 184, 189 (2d Cir. 2008)).  The Second Circuit in <u>Lewis v. Cowen</u>, 165 F.3d 154, 163-64 (2d Cir. 1999), and in <u>Ruotolo</u>, <u>supra</u>, 514 F.3d at 189, distinguished "whether the

employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose,'" Ruotolo, supra, 514 F.3d at 189, quoting Lewis, supra, 165 F.3d at 163-64.

Defendant reiterates that Plaintiff failed to allege a stigma-plus claim for a liberty interest (id. at 6-7).  Defendant concludes that only the prima facie case of McDonnell Douglas is applicable for this motion to dismiss (id. at 7-8).  Defendant argues that Plaintiff has not alleged facts to make a prima facie case (id.).  Defendant also concludes that the Complaint does not plausibly allege the contentions (id. at 5; see id. at 7-8).

> 4.   Menaker, Plaintiff's Supplemental Briefing, and Defendant's Response

This Court granted Plaintiff leave to argue Menaker v. Hofstra University, 935 F.3d 20 (2d Cir. 2019) (Docket No. 20).  In his motion for leave to supplement, Plaintiff argues that Defendant framed his case that Defendant "fearing to seem unresponsive, took student(s)' allegation at face value, and accepted them as true without following necessary due process procedures to protect Plaintiff's reputation" (Docket No. 19, Pl. Notice of Motion and Motion at 1).  He claims that Menaker addressed that same issue, "holding that they raised a plausible claim of discrimination" (id. at 1-2).

Defendant responded to this supplementation that Menaker is factually distinguishable from the present case (Docket No. 22, Def. Memo. at 1-4).  Plaintiff here has not alleged the procedural irregularities asserted in Menaker (id. at 4).

These arguments merit a brief discussion of Menaker to distinguish that case from the one at bar.  In that case, plaintiff Jeffrey Menaker was the tennis coach at Hofstra University.  He was confronted by one of the women players claiming that his predecessor promised her a full scholarship.  Menaker investigated that claim, could not find the

representation, and denied the player's claim.  Months later, her family wrote to Hofstra alleging that Menaker sexually harassed that player.  Menaker, supra, 935 F.3d at 27. Menaker denied this.  Hofstra conducted a series of meetings with Menaker first accusing him of sexual harassment and stating that the university would investigate; Menaker supplied documents to Hofstra in his defense.  Id. at 27-29.  Weeks later, there was a final meeting where Menaker was fired for unprofessional conduct, id. at 29.  After filing an EEOC charge, Menaker sued under Title VII.  Hofstra moved to dismiss, and that motion was granted, id., Menaker appealed.  The Second Circuit vacated and remanded, holding that Menaker sufficiently pled facts to allege a prima facie case of Title VII sex discrimination, 935 F.3d at 26.  This holding was based upon the district court in that case misconstruing a Circuit precedent.  The Second Circuit remanded for the district court to consider whether Menaker alleged a "cat's paw" theory, id.

The Second Circuit found the issue was whether Menaker alleged "circumstances that provide at least minimal support for an inference of discriminatory intent," 935 F.3d at 31.  The court then refer to its decision in Doe v. Columbia University, 831 F.3d 46 (2d Cir. 2016), and concluding that the district court misapplied that precedent, Menaker, supra, 935 F.3d at 31.  The Second Circuit in Menaker rejected the district court's "attempt to limit Doe v. Columbia to cases where the public pressure on a university is particularly acute," 935 F.3d at 33.  Doe v. Columbia, in turn, was also a Title VII action where the Second Circuit held that plaintiff John Doe alleged a claim of sex discrimination for his accusation that he was suspended as a student due to a sexual assault allegation motivated by improper consideration of his sex, Doe v. Columbia Univ., supra, 831 F.3d at 48; Menaker, supra, 935 F.3d at 31.  As for the degree of public pressure on the

university, the Menaker court held that "when combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even minimal evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination," Menaker, supra, 935 F.3d at 33 (emphasis in original) (see Docket No. 19, Pl. Notice of Motion and Motion at 2).  The Second Circuit concluded that

> "Doe v. Columbia stands for the general principle that where a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a prima facie case of sex discrimination,"

Id.

Plaintiff in this case cited to Menaker (and its discussion of Doe v. Columbia) as an example of the "atmosphere of public pressure that informed [Hofstra's] decisions" (Docket No. 19, Pl. Notice of Motion and Motion at 2, citing Menaker, supra, 935 F.3d at 31-32, 33 (slip opinion, 18-3089-cv, at 15-17, 20).

Menaker and Doe v. Columbia, however, are not applicable here and is distinguishable.  Menaker was a Title VII action while Doe v. Columbia was a Title IX and Title VII case.  Murray here claims violations of other civil rights (property or liberty interest in personal reputation and free speech), alleging state law claim for sex and age discrimination under the New York State Human Rights Law.  Plaintiff here only alleges suspension (for an unknown duration or extent) and not a termination to allege a stigma-plus claim.

    C.  Reputation Alone as a Liberty Interest

The First Cause of Action alleges violation of 42 U.S.C. § 1983 by unlawful deprivation of Plaintiff's liberty interest (Docket No. 1, Compl. ¶¶ 9-24), specifically in his good name and reputation (id. ¶ 10 & n.1, citing Jenkins v. McKeithen, 395 U.S. 411, 423-24, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)).  This First Cause of Action turns upon whether one's reputation and good name by themselves is a liberty interest recognized under the Due Process Clause.  The United States Supreme Court has changed its position on this matter.

For a due process violation, Plaintiff needs to allege a property or liberty interest infringed by Defendant, Ware v. City of Buffalo, 186 F. Supp.2d 324, 331 (W.D.N.Y. 2001) (Curtin, J.).  As noted by the Second Circuit in reviewing the history of reputation as a liberty interest under the Due Process Clause,

> "Prior to Paul, the concept of 'liberty' in the Due Process Clause of the Fourteenth Amendment appears to have been widely understood to encompass a person's interest in his or her good name and reputation, without more.  See Laurence H. Tribe, American Constitutional Law § 10–9 (2d ed.1988).  That principle seemed to be established by the Supreme Court's decision in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)."

Doe v. Department of Public Safety ex rel. Lee, 271 F.3d 38, 51 (2d Cir. 2001).  In 1976, the Supreme Court "reoriented this precedent," id. at 52.

The Supreme Court, in Paul v. Davis, 424 U.S. 693, 694, 721, 96 S.Ct. 1185, 47 L.Ed.2d 405 (1976), held that reputation or defamation, standing alone, does not raise a liberty or property interest protected by the Fourteenth Amendment and could be actionable under § 1983.  There, plaintiff sued to challenge a police department practice of publishing warning posters of persons suspected of shoplifting, id. at 695.

> "The [Paul] Court acknowledged that it had 'in a number of . . . prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts.' Id. at 701, 96 S.Ct. 1155.  But in each such case, the Paul Court reasoned, a liberty interest was implicated only because the state had not only stigmatized the plaintiff, but had also impaired or altered some other 'more tangible interest[ ],' such as 'a right or status previously recognized by state law.' Id. at 701, 711, 96 S.Ct. 1155."

Doe, supra, 271 F.3d at 53.

Then-Justice William Rehnquist for the majority in Paul rejected plaintiff's argument that any tort also is a Due Process Clause violation.

> "It is hard to perceive any logical stopping place to such a line of reasoning. Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under "color of law" establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent."

Paul, supra, 424 U.S. at 698-99.

Justice William Brennan (with Justices Byron White and Jenkins-author Thurgood Marshall) dissented in part, arguing that this majority opinion in Paul abrogated Jenkins without expressly overruling it, Paul, supra, 424 U.S. at 714, 724 (Brennan, J., concurring in part, dissenting in part).

Therefore, with Paul's rejection of Jenkins and the stand-alone reputation liberty interest, loss of reputation is actionable as a liberty interest only if combined with another deprivation.  This would allege a stigma-plus claim, where the stigma alleged is the loss of reputation and the plus is the other deprivation (such as the termination of employment).

Plaintiff's claims here, however, are for loss of his reputation without a recognized due process violation, such as unlawful termination.  Plaintiff was suspended but he does

not allege how long he was suspended.  The Complaint does not state whether Plaintiff was suspended as of the filing of the Complaint or the consequences arising from that suspension (for example, whether it was without pay, loss of credit for retirement or tenure purposes).  The Complaint later alleges that Plaintiff remained employed by Defendant (Docket No. 1, Compl. ¶ 52).  It is not clear that this suspension is the equivalent to a termination that would be the "plus" to allege an actionable stigma-plus claim from the harm to his reputation.  He therefore has not alleged the "plus" for the stigma-plus claim.

Defendant's Motion to Dismiss (Docket No. 11) the First Cause of Action is granted.

### D. Free Speech

The Second Cause of Action alleges deprivation of Plaintiff's freedom of speech by his employer, a public entity, by Defendant ordering that he not discuss the accusation (Docket No. 1, Compl. ¶¶ 27-28, 30-31, 36) while issuing a statement that accepted the accusing students' version of events (id. ¶¶ 32-34).  Plaintiff also cites Jenkins in the Complaint (id. ¶ 27, n.2) stating that free speech is a fundamental constitutional right.

While free speech is fundamental, speech by a public employee as controlled by his employer depends whether the speech is on a matter of public interest or not.  The Complaint, however, does not allege a matter of public interest that Plaintiff was barred to state by Defendant.  Defendant enjoined Plaintiff from discussing the pending allegation against Plaintiff.  His intended statements probably are his personal grievance (that he was falsely accused, or a reasonable explanation existed for the showing), from his alleged objection to Defendant released a statement adopting the accusers' version

of events (cf. id. ¶¶ 32-34), and not on a matter of public interest.  But this is speculative because the Complaint does not allege what Plaintiff would have said.

Plaintiff contends that the false accusation that he was a criminal stated a matter of public concern (Docket No. 17, Pl. Memo. at 5).  He coupled the silencing by Defendant with its affirmative adoption of his accusers' version to somehow raise a public concern. Again, the Complaint does not allege what Plaintiff would have said.  It is whatever he planned to say that asserts a matter of public interest not what Defendant does.

Although Plaintiff quotes Constantineau, supra, 400 U.S. at 437 (id. at 5 & n.20), which refers to affixing a "badge of infamy" and due process requiring the accused having the right to be heard to defend, the appellee in that case was not restricted from speaking. Instead, the appellee in Constantineau lacked a forum to attack the accusation.   In Constantineau, supra, 400 U.S. at 434, pursuant to a state law against serving alcohol to persons who "'by excessive drinking' produces described conditions or exhibits specified traits, such as exposing himself or family 'to want' or becoming 'dangerous to the peace' of the community" (quoting Wisc. Stat. § 176.26), posted signs in the town's liquor stores identifying the appellee as one not to be served, id. at 435.  The Court faulted this Wisconsin posting law because it did not afford Constantineau the ability to respond to the accusation of excessive drinking, id. at 437.  The objection to the statute was procedural, that it lacked any method for redress, id. at 439.  As later noted by the Court in Paul, Constantineau focused on whether there was liberty interest under the Fifth and Fourteenth Amendment Due Process Clauses against being defamed, Paul, supra, 424 U.S. at 702, 707.

The Second Cause of Action, however, does not allege a due process claim for depriving Plaintiff of an opportunity to be heard.  It merely alleges Plaintiff was placed on suspension and ordered not to discuss the allegations.  Even the First Cause of Action asserting an infringed liberty interest does not seek a hearing to redress the accusation.  The condition and duration of the suspension, whether Plaintiff grieved or appealed the suspension (or the silencing) are not alleged.  The duration Plaintiff was to be silent also was not alleged.

The First Amendment protects a public employee's right to speak only on matters of public interest and not on private grievances, Ruotolo, supra, 514 F.3d at 189.  Plaintiff has not asserted what he would have said, so it is not clear it would be matters of public concern.  Name clearing merely addresses private grievances.  Plaintiff needs to assert more than clearing his name to establish matters of public interest.  Defendant as a public employer may restrict the speech of its employees on operations of the school, see Garcetti, supra, 547 U.S. at 418, 419, here restricting Plaintiff from comment on pending accusation.

Plaintiff failed to allege infringement on his First Amendment rights by Defendant restricting his speech about the accusation.  As such, Defendant's Motion to Dismiss (Docket No. 11) is granted.  What remains is Plaintiff's state law Third Cause of Action.

E.  Supplemental New York State Human Rights Law Claims

The Third Cause of Action alleged here does not predominate over the federal claims alleged in the First and Second Causes of Action.  Defendant has not argued supplemental jurisdiction.

All three causes of action arise from the same operative facts, Plaintiff's suspension as a middle school teacher due to showing a film in class. The only additional allegations made in the Third Cause of Action asserts sex and age discrimination, while the focus of the federal causes of action was on Plaintiff's liberty interests and free speech rights.

Upon the dismissal of the First and Second Causes of Action, the only alleging original jurisdiction in this Court, this Court declines to exercise jurisdiction over Plaintiff's state law Third Cause of Action, 28 U.S.C. § 1367(c)(3), and those claims are dismissed without prejudice, see 13D Federal Practice and Procedure, supra, § 3567.3, at 410 & n.46 (citing cases); see also 28 U.S.C. § 1367(d) (toll of statute of limitations during pendency of federal action); see 13 D Federal Practice and Procedure, supra, § 3567.3, at 410-11, § 3567.4, at 458. This dismissal occurs prior to trial; thus the parties have little invested in the supplemental claim, 13D Federal Practice and Procedure, supra, §3567.3, at 429-31 (citing cases).

As a result, Defendant's Motion to Dismiss this case (Docket No. 11) is granted, although dismissal of the Third Cause of Action is without prejudice.

## IV.    Conclusion

Plaintiff fails to allege deprivation of his liberty interest because he did not allege another deprivation related to his claimed loss of reputation. He also failed to allege violation of his free speech rights in that Plaintiff failed to allege a matter of public interest in his personal grievance. This Court declines to exercise supplemental jurisdiction over Plaintiff's Third Cause of Action under the New York State Human Rights Law for sex and age discrimination, dismissing that Cause of Action without prejudice.

24

## V.     Orders

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 11) is GRANTED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:          April 26, 2021
                Buffalo, New York


                                              s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                           United States District Judge